UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES HAGMAN,

          Plaintiff,

v.                                                Case No.  5:06-cv-198-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

          Defendant.
_____

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Social Security disability benefits ("SSDI"). (Doc. 1.) The Commissioner has answered (Doc. 10) and both parties have filed briefs outlining their respective positions. (Docs. 19 & 20.) On May 8, 2007, the Court heard oral argument and therefore this matter is ripe for disposition. For the reasons discussed below the Commissioner's decision is due to be **REVERSED AND REMANDED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability benefits on January 30, 2002, alleging an onset date of May 22, 1995. (R. 87.) During the administrative hearing, Plaintiff amended his onset date to December 1, 1996. (R. 226.)  Plaintiff was last insured for obtaining disability benefits on December 31, 1999. (R. 101.) His claim was denied initially and upon review. (R. 40-42, 45-47.) On June 24, 2004, following a hearing, Administrative Law Judge Albert D. Tutera issued a decision

unfavorable to Plaintiff. (R. 29-36.) Plaintiff's request for review of that decision was granted, and the Appeals Council remanded the case back to an Administrative Law Judge to "[o]btain additional evidence concerning Plaintiff's left ankle and disc herniation from Doctors Letourneau and Kagan." (R. 59-61.) Furthermore, the Appeals Council ordered the Administrative Law Judge to give further consideration to Plaintiff's residual functional capacity and provide reasons in the record to support any limitations. (R. 61.)

On August 25, 2005, following a hearing before Administrative Law Judge Philemina M. Jones (the "ALJ"), the ALJ issued a decision unfavorable to Plaintiff. (R. 13-21.) Plaintiff's request for review of that decision was denied by the Appeals Council on March 31, 2006, rendering the ALJ's decision the final decision of the Commissioner. (R. 5-7.) On May 25, 2006, Plaintiff filed the instant appeal to this Court of the Commissioner's final decision. (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2003) (All further references to 20 C.F.R. will be to the 2003 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the

---

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

national economy.[15] The Commissioner may satisfy this burden by pointing to the Grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back

---

[15] Doughty, 245 F.3d at 1278 n.2.  In Doughty the court explained this burden shifting as follows: In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996).  See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

At the time of the decision, Plaintiff was fifty-eight years old. (R. 226.) However, the Plaintiff was 49 and almost 50 years of age through December 31, 1999, the date last insured. Plaintiff has a high school education and served in the Army in Vietnam. (R. 228.) The record begins with Plaintiff's injuries from a motor vehicle accident on August 30, 1983 - an incomplete cervical spine injury resulting in quadrapeligia. (R. 172, 188, 225.) After considerable rehabilitation, Plaintiff returned to work with quadriparesis. *Id.* However, due to the motor vehicle accident, Plaintiff suffered from a neurogenic bladder, causing constant "squirts" of urine which prompted daily clothing changes at work. (R. 166, 172-174, 196.) Plaintiff was involved in another motor vehicle accident sometime in 1993 or 1994, which resulted in a herniated disc. (R. 196, 199, 232.)

While continuing to suffer from those ailments, Plaintiff worked as a sales consultant for building material companies. (R. 149, 229.) Then on May 22, 1995, Plaintiff fractured/dislocated his left ankle in a wave runner accident. Due to the injury, Plaintiff underwent open reduction and internal fixation surgeries. (R. 185-189.) During such time, Plaintiff claimed he became disabled due to a combination of impairments from his numerous vehicular accidents. (R. 186, 226.)

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that between December 1, 1996 and December 31, 1999 - the

relevant period of time in this case - Plaintiff suffered from the following impairments: cervical myelopathy, a previous left ankle fracture and a neurogenic bladder.[21] (R. 19.)

Dr. James Letourneau, A. Kagan Orthopaedics and Sports Medicine, and Dr. Mark Farmer treated Plaintiff during the relevant period of time for his injuries, including the herniated discs and fractured ankle. As discussed at oral argument, Plaintiff was unable to locate medical records from Dr. Letourneau, a chiropractor who treated Plaintiff's back condition, or from A. Kagan Orthopaedics and Sports Medicine and produce these records to the ALJ in time for the administrative decision. (R. 223-224.) Since then, Plaintiff advises the Court that the missing evidence has been obtained, as well as several new records with which Plaintiff seeks to update the record.[22]

The medical evidence that is included in the record discloses the following relevant information. Plaintiff was treated by Doctors Farmer and A. Kagan for his ankle injury at A. Kagan Orthopaedics and Sports Medicine. Dr. Farmer performed surgery on Plaintiff's left ankle in 1995. (R. 151.) In a summary from November 14, 2001, Dr. Kagan examined Plaintiff for difficulties with his right hip and left ankle. *Id.* Dr. Kagan noted palpable fixation and tenderness of the left ankle. (R. 152.) Dr. Kagan concluded that Plaintiff's complaints were probably due to post-traumatic arthritis and lumbar radiculopathy. *Id.* Dr. Kagan prescribed Plaintiff a cane. *Id.*

On October 31, 2002, after the period at issue, Dr. Farmer examined Plaintiff for complaints of falling 2-3 times per day due to sharp pain in and around the ankle. (R.

---

[21] Any defective functioning of bladder due to impaired innervation. Lippincott, Williams & Wilkins, Stedman's Medical Dictionary (27th ed. 2000).

[22] Doc. 19, Exs. A, B, C and D.

191.) Dr. Farmer noted limited motion and definite spasticity of his left ankle. *Id.* He prescribed Baclofen to relieve the spasticity and recommended removal of the hardware in his ankle from the fixation surgery. *Id.* Plaintiff returned to Dr. Farmer for the management of his ankle on March 9, 2004. (R. 190.) Plaintiff complained of increasing pain, stiffness, sudden spasms and giving way. *Id.*

During the hearing, the ALJ asked a vocational expert ("VE") if Plaintiff could perform his past relevant work or other *light work* if Plaintiff required frequent bathroom breaks. (R. 248-249.) The VE stated, "No, ma'am, not in my opinion...he would not be able to control his bowels or his bladder."

## IV. **DISCUSSION**

In his memorandum, the Plaintiff maintains that this case should be remanded for the following reasons. First, Plaintiff argues that the ALJ failed to properly develop and construct the record in that the ALJ failed to obtain missing exhibits from Doctors Kagan and Letourneau, failed to enter into the record additional records provided to the Commissioner and failed to obtain a medical source statement as required by the Appeals Council. Secondly, Plaintiff argues that the case should be remanded because the Plaintiff has new and material evidence.  Third, Plaintiff contends that the ALJ erred at step 2 of the sequential evaluation by not considering all impairments, which resulted in an erroneous finding that Plaintiff had a functional capacity for light work.  Fourth, Plaintiff argues that ALJ erred by failing to obtain a medical source statement to be used in determining the date of disability onset.  However, during oral argument the parties and the Court focused upon two primary arguments. First, Plaintiff focused upon the failure of the ALJ to include in the record medical evidence from several doctors, which

Plaintiff contends had been submitted. Second, at oral argument, the Court focused upon the issue of whether the ALJ had properly considered the evidence and analyzed whether the Plaintiff could return to his past relevant work in view of the evidence that Plaintiff had neurogenic bladder problems.

Because the parties have vigorously asserted their respective positions with regard to the issue of the missing records from Dr. Abbott Kagan and Dr. James Letourneau (the "missing records"), the Court will address this issue first, even though this issue is not sufficient to require reversal.

As a starting point both parties agree that the ALJ has the basic duty to fully and fairly develop the record as to all relevant issues.[23] However, the claimant has the ultimate burden of proving that he is disabled, and is, therefore, responsible for furnishing medical and non-medical evidence regarding his impairments.[24]

In the instant case as required by the Appeals Council in its order reversing and remanding the case for a further administrative hearing, the ALJ sent written requests to the Plaintiff's representative and made oral requests for the records at the administrative hearing.  For example, on December 21, 2004 the ALJ wrote a letter to Plaintiff's representative advising "[i]f there is more evidence you want the ALJ to see, get it to us as soon as possible. If you need help, you should contact us immediately.

---

[23] 20 C.F.R. § 404.1512(d)-(f) (2007); Cowart v. Schweiker, 662 F.2d 731, 735-736 (11th Cir. 1981).

[24] 20 C.F.R §. 404.1512(a) ("[y]ou must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)").

You may ask the ALJ to issue a subpoena ... "[25] The record further reflects that the ALJ wrote additional letters on January 3, 2003, January 10, 2003 and then again on February 16, 2005 notifying the Plaintiff that it was her responsibility to provide medical evidence and to ensure that the ALJ received the medical evidence either at the hearing or before the hearing.[26] Indeed, the letter from the ALJ to Plaintiff's representative dated January 10, 2005 expressly addressed the issue of the missing records from Doctors Letourneau and Kagan. In this letter the ALJ stated: "Pursuant to the Appeals Counsel (sic) remand in the above case, I am requesting that you provide the complete records from Dr. James Letourneau and Dr. Abbott Kagan."

In addition to the written requests for the missing records by the ALJ, the ALJ also discussed the records at the two administrative hearings and agreed to keep the record open so that Plaintiff could submit the records.[27]

Accordingly, in the Court's view the record is abundantly clear that the ALJ complied with the mandate of the Appeals Council to include these records, Further, the efforts made by the ALJ to obtain these records from the Plaintiff went well beyond the duty of the ALJ to fully and fairly develop the record. Indeed, the ALJ even alerted the Plaintiff to the fact that the ALJ still did not have the records from Drs. Kagan and Letourneau. Whether the records previously had been sent to the Social Security Administration or even whether the records were lost by the Social Security Administration misses the point. It is not the role of this Court nor does this Court have

---

[25] R. 65.

[26] R. 22, 23, 71.

[27] R. 226, 258.)

the authority to supervise the administrative bureaucracy and record keeping of the Social Security Administration. Rather, the narrow role of this Court in a case like this where a claimant seeks judicial review of the decision of an administrative agency is to review the decision to ensure that the decision is based upon substantial evidence and that the decision is in accordance with the applicable legal standards. The ALJ in this case advised the claimant that if he does not provide the requested medical information the ALJ will make her decision based upon the medical evidence that is presented. This action is fully consistent with the regulations.[28] Accordingly, for these reasons, the Court concludes that the ALJ did not violate his duty to develop the record and the ALJ did not fail to follow the mandate of the Appeals Council when he rendered his decision without the benefit of the missing records.

Turning to Plaintiff's second argument - that the missing records are new and material evidence - the Court need not address this issue because as explained below, this case is due to be reversed and remanded and as such the Plaintiff will be afforded an opportunity to present the missing records (which he now has) to the ALJ at a subsequent hearing.

The Court will now turn to the issue which requires reversal. Plaintiff argues that the ALJ erred in concluding that Plaintiff could return to his past relevant work as a construction salesman. The critical error in the ALJ's analysis of Plaintiff's ability to engage in his past relevant work is that the ALJ failed to consider the impact that

---

[28] 20 C.F.R. 404.1518 ("[i]f you do not give us the medical and other evidence that we need and request, we will have to make a decision based on the information available in your case").

Plaintiff's neurogenic bladder problems would have on his ability to perform the demands of Plaintiff's past relevant work.

With regard to the Plaintiff's ability to perform past relevant work the ALJ found that:

> [t]he evidence in this case establishes that the claimant has past relevant work as a sales representative which according to the vocational expert is light in exertional demands and semiskilled in nature. The impartial vocational expert further testified that based upon the claimant's residual functional capacity, the claimant could return to his past relevant work as a sales representative as previously performed and as generally performed in the national economy.[29]

The ALJ's finding is directly contrary to the testimony of the VE. The ALJ found - and the medical evidence documented - that the Plaintiff suffered from a neurogenic bladder. Consequently, during the hearing, as part of the ALJ's evaluation of whether the Plaintiff could meet the demands of his past relevant work the ALJ posed hypothetical questions to the VE. During the questioning the following exchange occurred between the ALJ and the VE:

> Q: I'm going to assume that I have an individual who's 50 to 54 years of age, who has the past relevant work and education as described for the claimant, that the individual could perform light work with the additional restrictions of only being able to occasionally climb, balance, stoop, kneel, crouch, or crawl. Would he be able to perform any of his past relevant work or other work?

---

[29] R. 20.

> A: Well, he definitely would not be able to be a carpenter .... The salesman, I would say, yes, he could do that, based on this hypothetical.[30]

The exchange went on, however, and the ALJ posed a hypothetical question to the VE that took into account Plaintiff's restrictions from the neurogenic bladder:

> Q: And if I add to that the individual would have to always have access to a bathroom on an as-needed basis to take breaks, unscheduled breaks, would that change your response?
>
> A: Yes, ma'am. This type jobs, you're, you're, always either talking to people, or you're moving from one place to another. I would assume that he did a great deal of driving, where he might be lucky enough to get to a filling station ... if he did go on himself ... so I would say that position, he wouldn't be able to do that job.
>
> Q: Okay. Would he be able to perform any jobs with that (inaudible)?
>
> A: No, ma'am, not in my opinion. ..[31]

Thus, it is evident that the ALJ misconstrued or ignored the testimony from the VE that the Plaintiff could not perform any jobs at the light work level, including the salesman job, because of Plaintiff's neurogenic bladder. The ALJ therefore erred by stopping the sequential evaluation at step four.

---

[30] R. 249.

[31] *Id.*

Accordingly, Court concludes that the ALJ's determination that Plaintiff could perform his past relevant work is not supported by substantial evidence and therefore this case is due to be reversed and remanded for further proceedings.[32]

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to conduct further proceedings consistent with this Order. The Clerk is directed to enter final judgment and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 28, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

---

[32] Because the case is being reversed and remanded for further proceedings the Plaintiff will have an opportunity to present to the ALJ the missing records from Doctors Kagan and Letourneau, which records cover the relevant period of time. Accordingly, Plaintiff's argument that the ALJ must obtain the opinion of a medical advisor to determine the date of onset is moot in view of the fact that the ALJ will have the benefit of medical records covering the relevant period of time.